IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA                              Crim. No.: 12-004 (JAF)
Plaintiff

V.

GILBERTO VARELA RIVERA
Defendant

# MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND FOR HEARING

**TO THE HONORABLE JOSE ANTONIO FUSTE**
**United States District Judge For The District Of Puerto Rico:**

    **COMES NOW**, Gilberto Varela Rivera, by and through the undersigned counsel, who very respectfully prays and states as follows:

1. Defendant hereby submits this petition under 28 U.S.C. §2255 and requests a hearing in order to address this matter.

**Procedural history:**

1. Gilberto Varela Rivera was indicted on January 4, 2012 on four counts:

   a)  Count One:  Prohibited person in possession of a firearm.  18 USC §922(g)(1).

   b)  Count Two: Possession of a firearm during and in relation of a drug trafficking crime. 18 USC §924(c)(1)(A).

   c)  Count Three:  Possession with intent to distribute a detectable amount of crack. 21USC §841(a)(1).

   d)  Count Four:  Possession with intent to distribute a detectable amount of marihuana.21 USC 841(a)(1).

2. On March 2, 2012, Defendant filed a motion to suppress the statements and the evidence in his case.

1

3. The suppression hearing was scheduled for March 6, 2012.

4. On that same date, March 6, 2012, the Assistant Public Defender assigned to Defendant brings in another Assistant Public Defender who never before discusses the case with Defendant, does not speak Spanish (Defendant does not speak English), and who stated that she was the one to present the hearing to suppress arguments.

5. On that same date, March 6, 2012, the government furnished an alleged statement by the defendant, which was not previously disclosed or announced under Rule 12 FCRP.

6. The government, defense counsel and the Court dwelled on and off the record, on the 30 year mandatory minimum imprisonment term exposure due to the "automatic mode" of the weapon found in defendant's possession when arrested.

7. On March 9, 2012, Defendant entered into a Plea Agreement, stipulating a 15 year sentence.

8. The aforementioned Plea Agreement pled Defendant guilty to Count Two of the Indictment, charging a violation under 18 USC §924(c)(1)(A) which reads, in its pertinent part, that Defendant possessed a

> Glock pistol, black color, Model 22, serial number GAX007, 0.40 caliber, modified with a chip that allows it to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, loaded with ten (10) rounds of .40 ammunition, in furtherance of a drug trafficking crime.

*Indictment*, p.2.

9. On May 4, 2012, Defendant moved to withdraw his guilty plea and for withdrawal of his first counsel.

10. The first counsel did not challenge the applicability of 18 USC §924(c)(1)(A) to the facts and the evidence in the case.

11. On May 25, 2012, the Court accepted the first counsel's motion to withdraw and appointed a second defense attorney, from the CJA Panel.

12. The second counsel moved to set aside the Plea entered by Defendant and to reset the suppression hearing.

13. The second counsel did not challenge the applicability of 18 USC §924(c)(1)(A) to the facts and the evidence in the case.

14. The Pre-sentence Report (PSR) was filed on July 20, 2012.  Defendant filed objections to said report on July 31, 2012.

15. The objections to the report were never addressed at the sentencing hearing, nor decided by the Court.

16. On August 1, 2012, the motion to withdraw the guilty plea was denied and Defendant was sentenced to 20 years of imprisonment.

17. On August 6, 2012, a notice of appeal was filed.

18. The Appeal challenged the District Court's ruling on the following grounds:

    (a)  Abuse of discretion in refusing to allow withdrawal of the plea;

    (b) Procedural and substantive error at sentencing defendant to an additional five years; and

    (c)  The waiver of Appeal was unenforceable in this case.

19.  The appeal did not challenge the applicability of 18 USC §924(c)(1)(A) to the facts and the evidence in the case.

20.  On January15, 2014, the Court of Appeals denied the Appeal and affirmed the sentence.

**Brief Statement of Facts:**

1.  On December 18, 2011, at 7:49pm, Varela rented room 90 at La Roca Motel in Arecibo.

2. At 4:00am, when the rental expired, motel personnel called a Police of Puerto Rico Police.

3. The Motel employee made attempts to collect an additional rental fee from Defendant or in the alternative, have him vacate the room, the police being there to assist.

4. The Police Department, dispatched officers at the scene at 6:30am and a police officer who moonlighted as a motel employee, arrived at the motel.

5. Despite the fact that no illegalities were perceived by the Police or motel employees, the motel owner authorized a forcible entry into room 90.

6. When the Police gained access to the room, they saw Defendant sleeping, next to a firearm (with ten bullets in its magazine), 79.1 grams of marihuana in plastic cylinders, 47 grams of marihuana in a plastic bag, 12.50 grams of cocaine, and an additional package with 4.5 grams of cocaine.

7. Varela was indicted in State Court, who dismissed the charges due to the illegality of the intervention which led to Defendant's arrest.

8. On December 23, 2011, a criminal complaint was filed in federal court for the same facts addressed in the state indictment.

9. Defendant filed to suppress the evidence and the search on account of the illegality of the intervention and the lack of probable cause.

10. The suppression hearing scheduled for March 6, 2012.

11. The suppression hearing was never held, due to the discovery by the federal government of a note by a POPR officer, handwritten in a blank sheet of paper with no letterhead, stating that Defendant stated that the Police was lucky Defendant was asleep when they entered the room or else he would have shot them.

12. Defendant's first counsel did not even visit defendant in jail to discuss the handwritten note provided in discovery.

13. This last minute handwritten note was never designated as evidence for trial, never disclosed prior to March 6, 2012, and was never mentioned or announced as evidence in the state court during the probable cause/preliminary hearings held in Arecibo.

14. Under the circumstances of added pressure stemming from the alleged note, and the representations made by defense counsel, the government, and even the Court, that the mandatory minimum exposure would be 30 years of imprisonment, defendant pled guilty to the possession of a firearm in relation to a drug trafficking offense, pursuant to a Plea Agreement stipulating 15 years of imprisonment with the government.  This stipulation was not binding to the Court.

15. Upon sentencing, and after having filed two motions to withdraw his plea, stating basically, that the warrantless search and seizure was unconstitutional, that he was coerced and intimidated by his mandatory minimum exposure to take the plea he subscribed and that his plea was involuntary.

16. The Court stated on the record that the plea Agreement entered into by defendant was a "sweet deal" since the possession of a "machine gun" exposed him to a mandatory minimum 30 year sentence.

17. The guideline sentence to the offense –had it been properly charged- would be less than the time of imprisonment imposed.

18. This motion is filed timely, addressing the following issues which, individually, or taken as a whole, justify vacating, setting aside and correcting the sentence imparted in this case:

- The sentence was imposed in violation of the Constitution or laws of the United States.
- The court was without jurisdiction to impose such sentence under the statute of charge and conviction.
- The sentence was in excess of the maximum authorized by law.
- The sentence is otherwise subject to collateral attack.

(a) Defendant was not charged with an offense, but a penalty provision.

(b) The weapon charged was neither a "machine gun" nor an "assault weapon" under the applicable law definitions, that would justify the application of 18 USC §924(c)(1)(A) at sentencing.

(c) No certification has ever been submitted into evidence, not in federal court or state court, denominating the weapon seized from defendant as an "assault weapon" or a "machine gun."

(d) Counsels representing Defendant at different stages prior to the filing of this motion have never addressed or challenged the applicability of 18 USC §924(c)(1)(A) to the facts of this case.  The use of a chip to render a pistol semiautomatic does not make the weapon "fully automatic", an "assault weapon" or a "machine gun."

(e) Once the Public Defender was assigned to Defendant, his counsel was substituted by another assistant public defender that Defendant had never seen before; who spoke only English and Defendant speaks only Spanish.

(f) The investigation of the case was deficient and there was failure in uncovering, securing, and preserving evidence.

(g)  Evidence of the weapon being an "assault weapon" or a "machine gun" is an element of the offense of conviction.

(h) Had this matter been brought to the Court's attention, Defendant's exposure to a prison term would not be 30 years.

6

**Relevant Statutes**

**28 U.S.C. § 2255** provides:

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(b) Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

(c) A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

(d) An appeal may be taken to the court of appeals from the order entered on the motion as from the final judgment on application for a writ of habeas corpus.

(e) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(g) Except as provided in section 408 of the Controlled Substances Act [21 USCS § 848], in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

(h) A second or successive motion must be certified as provided in section 2244 [28 USCS § 2244] by a panel of the appropriate court of appeals to contain--

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or
(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.


## 18 U.S. Code § 924 - Penalties

Current through Pub. L. 113-108. (See Public Laws for the current Congress.)

(a)

(1) Except as otherwise provided in this subsection, subsection (b), (c), (f), or (p) of this section, or in section 929, whoever—

(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

(B) knowingly violates subsection (a) (4), (f), (k), or (q) of section 922;

(C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922 (l); or

(D) willfully violates any other provision of this chapter,

shall be fined under this title, imprisoned not more than five years, or both.

(2) Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.

(3) Any licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly—

(A) makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or

(B) violates subsection (m) of section 922,

shall be fined under this title, imprisoned not more than one year, or both.

(4) Whoever violates section 922 (q) shall be fined under this title, imprisoned for not more than 5 years, or both. Notwithstanding any other provision of law, the term of imprisonment imposed under this paragraph shall not run concurrently with any other term of imprisonment imposed under any other provision of law. Except for the authorization of a term of imprisonment of not more than 5 years made in this paragraph, for the purpose of any other law a violation of section 922 (q) shall be deemed to be a misdemeanor.

(5) Whoever knowingly violates subsection (s) or (t) of section 922 shall be fined under this title, imprisoned for not more than 1 year, or both.

(6)

(A)

(i) A juvenile who violates section 922 (x) shall be fined under this title, imprisoned not more than 1 year, or both, except that a juvenile described in clause (ii) shall be sentenced to probation on appropriate conditions and shall not be incarcerated unless the juvenile fails to comply with a condition of probation.

(ii) A juvenile is described in this clause if—

(I) the offense of which the juvenile is charged is possession of a handgun or ammunition in violation of section 922 (x) (2); and

(II) the juvenile has not been convicted in any court of an offense (including an offense under section 922 (x) or a similar State law, but not including any other offense consisting of conduct that if engaged in by an adult would not constitute an offense) or adjudicated as a juvenile delinquent for conduct that if engaged in by an adult would constitute an offense.

(B) A person other than a juvenile who knowingly violates section 922 (x)—

(i) shall be fined under this title, imprisoned not more than 1 year, or both; and

(ii) if the person sold, delivered, or otherwise transferred a handgun or ammunition to a juvenile knowing or having reasonable cause to know that the juvenile intended to

carry or otherwise possess or discharge or otherwise use the handgun or ammunition in the commission of a crime of violence, shall be fined under this title, imprisoned not more than 10 years, or both.

(7) Whoever knowingly violates section 931 shall be fined under this title, imprisoned not more than 3 years, or both.

(b) Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce shall be fined under this title, or imprisoned not more than ten years, or both.

(c)

(1)

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(B) If the firearm possessed by a person convicted of a violation of this subsection—

(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

(ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

(C) In the case of a second or subsequent conviction under this subsection, the person shall—

(i) be sentenced to a term of imprisonment of not less than 25 years; and

(ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

(D) Notwithstanding any other provision of law—

(i) a court shall not place on probation any person convicted of a violation of this subsection; and

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

(2) For purposes of this subsection, the term "drug trafficking crime" means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

(4) For purposes of this subsection, the term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

(5) Except to the extent that a greater minimum sentence is otherwise provided under this subsection, or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries armor piercing ammunition, or who, in furtherance of any such crime, possesses armor piercing ammunition, shall,

11

in addition to the punishment provided for such crime of violence or drug trafficking crime or conviction under this section—

(A) be sentenced to a term of imprisonment of not less than 15 years; and

(B) if death results from the use of such ammunition—

(i) if the killing is murder (as defined in section 1111), be punished by death or sentenced to a term of imprisonment for any term of years or for life; and

(ii) if the killing is manslaughter (as defined in section 1112), be punished as provided in section 1112.

(d)

(1) Any firearm or ammunition involved in or used in any knowing violation of subsection (a)(4), (a)(6), (f), (g), (h), (i), (j), or (k) of section 922, or knowing importation or bringing into the United States or any possession thereof any firearm or ammunition in violation of section 922 (l), or knowing violation of section 924, or willful violation of any other provision of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, or any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture, and all provisions of the Internal Revenue Code of 1986 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter: Provided, That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

(2)

(A) In any action or proceeding for the return of firearms or ammunition seized under the provisions of this chapter, the court shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

(B) In any other action or proceeding under the provisions of this chapter, the court, when it finds that such action was without foundation, or was initiated vexatiously, frivolously, or in bad faith, shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

(C) Only those firearms or quantities of ammunition particularly named and individually identified as involved in or used in any violation of the provisions of this chapter or any rule or regulation issued thereunder, or any other criminal law of the United States or as intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure, forfeiture, and disposition.

(D) The United States shall be liable for attorneys' fees under this paragraph only to the extent provided in advance by appropriation Acts.

(3) The offenses referred to in paragraphs (1) and (2)(C) of this subsection are—

(A) any crime of violence, as that term is defined in section 924 (c)(3) of this title;

(B) any offense punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.) or the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.);

(C) any offense described in section 922 (a)(1), 922 (a)(3), 922 (a)(5), or 922 (b)(3) of this title, where the firearm or ammunition intended to be used in any such offense is involved in a pattern of activities which includes a violation of any offense described in section 922 (a)(1), 922 (a)(3), 922 (a)(5), or 922 (b)(3) of this title;

(D) any offense described in section 922 (d) of this title where the firearm or ammunition is intended to be used in such offense by the transferor of such firearm or ammunition;

(E) any offense described in section 922 (i), 922 (j), 922 (l), 922 (n), or 924 (b) of this title; and

(F) any offense which may be prosecuted in a court of the United States which involves the exportation of firearms or ammunition.

(e)

(1) In the case of a person who violates section 922 (g) of this title and has three previous convictions by any court referred to in section 922 (g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the

sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922 (g).

(2) As used in this subsection—

(A) the term "serious drug offense" means—

(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or

(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

(C) the term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

(f) In the case of a person who knowingly violates section 922 (p), such person shall be fined under this title, or imprisoned not more than 5 years, or both.

(g) Whoever, with the intent to engage in conduct which—

(1) constitutes an offense listed in section 1961 (1),

(2) is punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46,

(3) violates any State law relating to any controlled substance (as defined in section 102(6) of the Controlled Substances Act (21 U.S.C. 802 (6))), or

(4) constitutes a crime of violence (as defined in subsection (c)(3)),

14

travels from any State or foreign country into any other State and acquires, transfers, or attempts to acquire or transfer, a firearm in such other State in furtherance of such purpose, shall be imprisoned not more than 10 years, fined in accordance with this title, or both.

(h) Whoever knowingly transfers a firearm, knowing that such firearm will be used to commit a crime of violence (as defined in subsection (c)(3)) or drug trafficking crime (as defined in subsection (c)(2)) shall be imprisoned not more than 10 years, fined in accordance with this title, or both.

(i)

(1) A person who knowingly violates section 922 (u) shall be fined under this title, imprisoned not more than 10 years, or both.

(2) Nothing contained in this subsection shall be construed as indicating an intent on the part of Congress to occupy the field in which provisions of this subsection operate to the exclusion of State laws on the same subject matter, nor shall any provision of this subsection be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this subsection.

(j) A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—

(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and

(2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

(k) A person who, with intent to engage in or to promote conduct that—

(1) is punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

(2) violates any law of a State relating to any controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. 802); or

(3) constitutes a crime of violence (as defined in subsection (c)(3)),

smuggles or knowingly brings into the United States a firearm, or attempts to do so, shall be imprisoned not more than 10 years, fined under this title, or both.

(l) A person who steals any firearm which is moving as, or is a part of, or which has moved in, interstate or foreign commerce shall be imprisoned for not more than 10 years, fined under this title, or both.

(m) A person who steals any firearm from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall be fined under this title, imprisoned not more than 10 years, or both.

(n) A person who, with the intent to engage in conduct that constitutes a violation of section 922 (a)(1)(A), travels from any State or foreign country into any other State and acquires, or attempts to acquire, a firearm in such other State in furtherance of such purpose shall be imprisoned for not more than 10 years.

(o) A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life.

(p) **Penalties Relating To Secure Gun Storage or Safety Device.—**

(1) **In general.—**

(A) **Suspension or revocation of license; civil penalties.—** With respect to each violation of section 922 (z)(1) by a licensed manufacturer, licensed importer, or licensed dealer, the Secretary may, after notice and opportunity for hearing—

(i) suspend for not more than 6 months, or revoke, the license issued to the licensee under this chapter that was used to conduct the firearms transfer; or

(ii) subject the licensee to a civil penalty in an amount equal to not more than $2,500.

(B) **Review.—** An action of the Secretary under this paragraph may be reviewed only as provided under section 923 (f).

(2) **Administrative remedies.—** The suspension or revocation of a license or the imposition of a civil penalty under paragraph (1) shall not preclude any administrative remedy that is otherwise available to the Secretary.

## ARGUMENT

Generally, a movant is barred from raising an alleged error affecting his conviction or sentence for the first time on collateral review unless he can show both cause for the default and actual prejudice. *See United States v. Frady,* 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d

16

816 (1982) (failure to make a contemporaneous objection); *United States v. Khan,* 835 F.2d 749, 753-54 (10th Cir.1987) (failure to raise issue on direct appeal); *United States v. Allen,* 16 F.3d 377, 378 (10th Cir.1994) (applying cause and prejudice standard to a collateral attack on a sentence). A movant can show cause for the procedural default if he can demonstrate that his claim was "so novel that its legal basis [was] not reasonably available to counsel." *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). Cause can also be established by showing that counsel rendered constitutionally ineffective assistance. *See Coleman v. Thompson,* 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *United States v. Kissick,* 69 F.3d 1048, 1054-55 (10th Cir. 1995). Additionally, the § 2255 movant who challenges his conviction can overcome the procedural bar if he can demonstrate that the constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States,* <u>523 U.S. 614</u>, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quotation omitted).

---

The four grounds for relief under Section 2255 are:

- "that the sentence was imposed in violation of the Constitution or laws of the United States"
- "that the court was without jurisdiction to impose such sentence"
- "that the sentence was in excess of the maximum authorized by law"
- that the sentence is "otherwise subject to collateral attack"

**Defendant herein challenges his conviction on the first, third and fourth of these grounds. As to the jurisdictional grounds, a challenge is made as to the statute used for conviction.**

Defendant was sentenced to 20 years imprisonment for violation of 18 U.S.C. §924(c)(1)(A). Appellant entered a plea bargain under §924(c)(1)(A)---which is not a crime, but a sentencing provision. The sentence of 20 years is excessive and unnecessary with the condition entered with the plea bargain. (*United States v. Tomko 562 F.3d 558 (2009)*)

Indictment by grand jury is a protection granted to defendants in federal felony cases under the Fifth Amendment of the U.S. Constitution, which states that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment of a Grand Jury." Fifth Amendment to the United States Constitution.

A criminal case formally begins with an indictment or information, which is a formal accusation that a person committed a crime. An indictment may be obtained when a lawyer for the executive branch of the U.S. government--the U.S. attorney or an assistant U.S. attorney, also referred to as the prosecutor--presents evidence to a federal grand jury that, according to the government, indicates a person committed a crime. The U.S. attorney tries to convince the grand jury that there is enough evidence to show that the person probably committed the crime and should be formally accused of it. If the grand jury agrees, it issues an indictment. After the indictment is issued, the defendant is either summoned to court or arrested (if not already under arrest), depending on the severity of the crime.  Indictment by grand jury is a protection granted to defendants in federal felony cases under the Fifth Amendment of the U.S. Constitution.

In this case, there was error in pleading in the Indictment.  Not only did the weapon in evidence was not an "assault weapon", but when the charges were selected for the plea agreement, the sentencing provision of the statute was chosen as the sentencing offense.

In *Castillo,* the Supreme Court held that the references to particular firearms in 18 U.S.C. § 924(c)(1) defined separate, aggravated crimes and were not merely sentencing factors. *See* 530 U.S. at 131, 120 S.Ct. 2090. Thus, to obtain convictions for the aggravated offenses delineated in § 924(c)(1), the type of firearm used by a defendant must be charged in the indictment, presented to the jury, and proved by the government beyond a reasonable doubt.

It is undisputed that the trial court found that Varela possessed a pistol modified by a chip, however, no evidence in discovery or in the indictment charges defendant with the use of a

18

"machine gun" or an" assault weapon."  Defendant argues that his conviction and sentence under § 924(c)(1))(A)  and that his Fifth and Sixth Amendment rights were violated because the type of weapon charged was not proved by the government beyond a reasonable doubt and it was treated as an assault weapon when there was no evidence that indeed it was an assault weapon. *See United States v. Gaudin,* 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) ("We have held that [the Fifth and Sixth Amendments] require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.").

The *Castillo* Court did not announce a new constitutional rule of criminal procedure; it construed a criminal statute to require a jury determination on the type of firearm used by the defendant. *See Castillo,* 530 U.S. at 131, 120 S.Ct. 2090 ("Congress intended the firearm type-related words it used in § 924(c)(1) to refer to an element of a separate, aggravated crime.").

The version of § 924(c)(1) applicable at the time of Defendant's charge, conviction and sentencing, set out three substantive crimes: (1) the use of a firearm during the commission of a crime of violence; (2) the use of a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon during the commission of a crime of violence; and (3) the use of a machine gun, destructive device, or firearm equipped with a firearm silencer or muffler during the commission of a crime of violence. *See* 18 U.S.C. § 924(c)(1) (1994). We have reviewed the indictment and it is clearly sufficient to charge Defendant with the offense delineated in § 924(c)(1) — using a firearm during the commission of a crime of violence.  The court must find Defendant guilty of the § 924(c)(1) charges if they were convinced that the government had proved that Defendant committed a crime of violence and used a firearm during the commission of such crime. The indictment described the firearm as a

Glock pistol, black color, Model 22, serial number GAX007, 0.40 caliber, modified with a chip that allows it to shoot automatically more than one shot,        without        manual reloading, by a single function of the trigger, loaded with ten (10)    rounds        of        .40 ammunition, in furtherance of a drug trafficking crime.

The jury, or in this case the Court, however, was not required to find that the firearm Defendant possessed was the a semiautomatic or fully automatic assault weapon. Although the indictment cannot support Defendant's convictions for the aggravated crime of using an assault weapon during the commission of a crime of violence, the indictment is clearly sufficient to support two convictions for the separate crime of using a firearm during the commission of a crime of violence.  Moreover, the mere presence of a chip does not make it a machine gun. The court's finding of firearm type would be a fact necessary to justify the reasonableness of a sentence under United States v. Booker, 543U.S. 220 (2005), because Congress has already specified the sentence, and it is not subject to review under Booker for reasonableness.

18 USC §924(c)(1)(A) provides for a fixed mandatory prison term for anyone who uses or carries a firearm during and in relation to any crime of violence or drug trafficking crime, or who possesses a firearm in furtherance of such an offense (in addition to the punishment provided for the crime of violence or drug trafficking crime itself, if charged). For violations of section 924(c), the *mandatory minimum penalty for the basic offense is 5 years*; if the firearm is a short-barreled rifle or shotgun or semiautomatic assault weapon, *10 years*; if a machine gun, destructive device, or firearm equipped with a silencer, *30 years*. For *second or subsequent convictions under section 924(c), the penalty is 25 years*, and if the firearm is a machine gun, etc., *life imprisonment without release*. These penalties are *consecutive to any other sentence*, such as for the underlying offense. *See*18 U.S.C. § 924(c). The firearms involved are subject to seizure. *See* 18 U.S.C. § 924(d)(1).

In *United States v. O'Brien*, 130 S. Ct. 2169 (2010), the U.S. Supreme Court held that the nature of the firearm (specifically, if the firearm is a "machine gun") is an element of the offense at section 924(c) to be found by the jury, not a sentencing factor to be found by the judge. The decision resolves a circuit split. Before *O'Brien*, six circuits construed section 924(c) as creating a sentencing issue for the judge. *See United States v.Cassell*, 530 F.3d 1009, 1016-17 (D.C. Cir. 2008); *United States v.Ciszkowski*, 492 F.3d 1264, 1268 (11th Cir. 2007); *United States v. Gamboa*, 439 F.3d 796, 811 (8th Cir. 2006); *United States v. Avery*, 295 F.3d 1158, 1169-71 (10th Cir. 2002); *United States v. Harrison*, 272 F.3d 220, 225-26 (4th Cir. 2001); *United States v. Sandoval*, 241 F.3d 549, 550 (7th Cir. 2001). Two construed the statute as creating an element for the jury. *United States v. O'Brien*, 542 F.3d 921, 926 (1st Cir. 2008); *United States v. Harris*, 397 F.3d 404 (6th Cir. 2005). The Court had previously held in *Castillo v. United States*, 530 U.S. 120 (2000), that the machine gun provision in an earlier version of section 924(c) constituted an element of the offense. *O'Brien* arose as the result of a 1998 amendment to section 924(c) that essentially broke a single run-on sentence into subparagraphs. As it did in *Castillo*, the Court in *O'Brien* examined five factors directed at determining congressional intent for the amendment: (1) language and structure in section 924(c), (2) tradition regarding offense elements and sentencing factors, (3) risk of unfairness, (4) severity of the sentence, and (5) legislative history. *O'Brien* at 2175. The court determined that section 924c's new structure reflected current practice to make statutes easier to read and that, in light of congressional silence as to the other factors, it was not intended to convert the offense element into a sentencing factor. *Id*. at 2180.

The guideline applicable to this statutory provision is §2K2.4 (Use of  firearm, Armor-Piercing Ammunition, or Explosive During or in Relation to Certain Crimes).

## Clarification of Gun Terms: Semi-automatic, Assault, Machine gun[1]

A fully automatic firearm, known under federal law as a "machine gun," is the only kind of firearm that is capable of firing repeatedly while the trigger is depressed. All other firearms, including all semi-automatics, fire only one shot when the trigger is pulled. The definitions found in federal law are useful in answering the question:

18 USC 921(a)(28): "The term 'semi-automatic rifle' means any repeating rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge."

26 USC 5845(b): "The term 'machine gun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

Fully automatic firearms ("machine guns") are used by our troops overseas against al-Qaeda and the Taliban, and by Hollywood action heroes against extraterrestrial aliens and other sensational adversaries.  They have been heavily regulated since 1934, under the National Firearms Act. They've been prohibited entirely in about half the states for decades. Other than for government purposes, their importation and manufacture have been prohibited under sections 18 USC 925(d)(3) and 18 USC 922(o) of the Gun Control Act since 1968 and 1986, respectively. The BATFE also interprets federal law to prohibit firearms that are easy to convert to fire fully automatically. Other than for gun control supporters' propaganda purposes, fully automatic machine guns have nothing to do with the "assault weapon" issue.

---

[1] http://www.ted.com/conversations/15567/clarification_of_gun_terms_se.html

Many news reports and programs equate "semi-automatic" with "assault" guns. People are led to believe that a semi-automatic can shoot several rounds per second. We hear news commentators calling for a ban of semi-automatic weapons.  Federal Assault Weapons Ban: "Semi-automatic firearms, when fired, automatically extract the spent cartridge casing and load the next cartridge into the chamber, ready to fire again. They do not fire automatically like a machine gun."[2]

Probably most hunting guns are semi-automatic, requiring a separate trigger pull for each round; that doesn't make them assault weapons. Of course, a victim can reasonably claim "assault" even if only one shot is fired at them (assault: a crime that involves causing a victim to apprehend violence).

"Assault weapon (semi-automatic) refers primarily (but not exclusively) to firearms that possess the cosmetic features of an assault rifle (which are fully-automatic). Actually possessing the operational features, such as 'full-auto', changes the classification from an assault weapon to a Class 3 weapon. Merely the possession of cosmetic features is enough to warrant such classification as an assault weapon." If a weapon has certain cosmetic features of an assault rifle (e.g. pistol grip, high capacity magazine etc.) it's classified as an assault weapon. [3]

Many news reports and programs equate "semi-automatic" with "assault" guns. People are led to believe that a semi-automatic can shoot several rounds per second. We hear news commentators calling for a ban of semi-automatic weapons.

The Federal Assault Weapons Ban defines such weapon as follows: "Semi-automatic firearms, when fired, automatically extract the spent cartridge casing and load the next cartridge into the chamber, ready to fire again. They do not fire automatically like a machine gun."

---

[2] http://en.wikipedia.org/wiki/Federal_Assault_Weapons_Ban
[3] Note that fully-automatic operation (hold trigger - several rounds per second) is not an assault weapon but a Class 3 weapon (e.g. machine gun) regulated by National Firearms Act).

Note that fully-automatic operation (hold trigger - several rounds per second) is not an assault weapon but a Class 3 weapon (e.g. machine gun) regulated by National Firearms Act).

**Use or possession**

The statute sets out two different relationships between the firearm in question and the underlying crime of violence or drug trafficking offense, depending on whether the defendant (i) used or carried the firearm, or (ii)possessed the firearm. If the defendant *used or carried* the firearm, these acts must only have been done "during and in relation to" the underlying offense for a violation of the statute to have occurred; if the defendant merely *possessed* the firearm, the possession must have been "in furtherance of" the underlying offense. A significant body of case law has developed to interpret these two phrases, with the general consensus being that "in furtherance of" requires a closer relationship between the firearm and the underlying offense than "during and in relation to" requires. For example, where the defendant only possessed the firearm and the underlying offense is a drug trafficking offense, the Sixth Circuit held that "[i]n order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use" and that other relevant factors "include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001) (citing *United States v.Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)) (affirming conviction where "there was an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades" and the defendant was found near the weapon in possession of cocaine and a large amount of cash). However, the

Ninth Circuit has rejected the use of this list of factors "in closer, and more common, cases" and generally the "checklist" approach. *United States v. Krouse*, 370 F.3d 965, 968 (9th Cir. 2004). Rather, the Ninth Circuit held "that sufficient evidence supports a conviction under § 924(c) when facts in evidence reveal a nexus between the guns discovered and the underlying offense." *Id.* (affirming conviction where "[n]o less than five high caliber firearms, plus ammunition, were strategically located within easy reach in a room containing a substantial quantity of drugs and drug trafficking paraphernalia" and "other [uncharged] firearms, which Krouse apparently kept for purposes unrelated to his drug business, . . . were stored elsewhere throughout his home."). In contrast, the Ninth Circuit rejected the claim that possession was in furtherance of a drug trafficking offense where there was no evidence to indicate that the defendant conducted drug trafficking activities in the home where the weapon was found. *United States v. Rios*, 449 F.3d 1009, 1015-16 (9th Cir. 2006).

Eight courts of appeals have decided or assumed without deciding that a defendant who receives firearms in exchange for drugs (which is not the case in this matter) possesses those firearms "in furtherance of" a drug trafficking offense. *See United States v. Doody, 600 F.3d 752 (7th Cir. 2010); United States v. Gardner*, 602 F.3d 97 (2d Cir.), *cert. denied*, 130 S. Ct. 3372 (2010); *United States v. Mahan*, 586 F.3d 1185 (9th Cir. 2009); *United States v. Sterling*, 555 F.3d 452, 458 (5th Cir. 2009); *United States v. Dolliver*, 228 F. App'x 2, 3 (1st Cir. 2007); *United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007); *United States v. Boyd*, 209 F. App'x 285, 290 (4th Cir. 2006); *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005). With respect to the "during and in relation to" requirement, courts have interpreted this phrase to include a temporal element ("during") as well as a nexus between the firearm and the underlying offense ("in relation to"). The nexus will depend on the particular facts and circumstances of the

offenses, but generally the evidence must support a finding that the weapon's presence was not coincidental; that is, simply carrying the firearm during the course of the offense is not sufficient. *United States v. Lampley*, 127 F.3d 1231, 1241 (10th Cir. 1997).  Rather, "the evidence must support a finding that the firearm furthered the purpose or effect of the crime . . .." *United States v. McRae*, 156 F.3d 708, 712 (6th Cir. 1998).

**Failure to challenge the charge and the lack of evidence that the weapon seized was a "machine gun" or an "assault weapon" and failure to address the applicability of the presumed 30 year mandatory minimum sentence.**

The fact that the Court, defense counsel and Defendant were misled that the applicable charge would entail punishment under §924(c)(1)(A) prejudiced the constitutional rights of the defendant and his right to prepare and have an effective defense. This is so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland v. Washington, 466 US 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

The State court in Arecibo did not present or have a forensic certification that the weapon in question was fully automatic, a machine gun, or an assault weapon.  Federal agents, who days later obtained custody of the weapon, did not provide a certification that the weapon in question was fully automatic, a machine gun, or an assault weapon.  The presence of a chip does not render a weapon fully automatic because the bullet is automatically placed in the firing chamber when another bullet is fired.  Moreover, the presence of merely ten bullets in the magazine of the weapon seized does not make it a "combat" or "assault weapon."  This issue is one of outmost importance in the prosecution and defense of this case and no one, not in the District Court nor the Appellate Court, raised the issue.

Defendant had a plausible defense in asserting his right to challenge the evidence in a suppression hearing.  The Fourth Amendment does not justify a warrantless search of premises

leased by a person just because the person overstayed in the room subject to the lease.  In any case, there was no justification to search it without a warrant, and under the circumstances of the case, no illegality, danger or exigent circumstances existed to break into a leased room that was not released when the checkout time accrued.  However, this plausible defense was set aside by Defendant when he was asserted by all the pertinent parties—to include the Court and the Defense—that his weapon yielded a §924(c)(1)(A) punishment and therefore he was exposed to a 30 year mandatory minimum.

Moreover, Defendant's criminal history did not justify an aggravated sentence that would render him a career criminal, because most of his criminal history was remote and could not be considered for Guideline purposes.  With the appropriate guideline calculation and statute application, Defendant would have been imparted a lesser sentence.

## CONCLUSION AND STATEMENT CONCERNING REQUEST FOR HEARING

For the reasons state above, we request that Varela's Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255 be granted.  A hearing before the court is necessary in this case and is requested.

Respectfully submitted. On July, 16, 2014,

*s/Marlene Aponte*
**MARLENE APONTE, ESQ.**
**USDC-PR- No. 208603**
**Avenida Las Colinas 1 A 4**
**Santa Paula**
**Guaynabo, Puerto Rico 00969**
**(787)547-5999**
**iamdlaw2010@hotmail.com**

## CERTIFICATE OF SERVICE

It is hereby certified that on this same date, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the United States Attorney's Office of the filing of this motion.

In San Juan, Puerto Rico, today  July 16, 2014.

RESPECTFULLY SUBMITTED,

*s/Marlene Aponte*
**MARLENE APONTE, ESQ.**
**USDC-PR- No. 208603[4]**

---

[4] This document has been prepared in good faith with information obtained by state and federal records and transcripts, and also with allegations raised by Defendant himself when addressing the Court on the record and in writing to the Court.